UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

JOSEPHINE THOMAS,

                           Plaintiff,                <u>COMPLAINT</u>
            -against-


NEW YORK CITY DEPARTMENT OF           JURY TRIAL DEMANDED
EDUCATION and EZRA MATTHIAS,
PRINCIPAL of I.S. 229 ROLAND PATTERSON,


                       Defendants.

_____

Plaintiff **JOSEPHINE THOMAS**, by and through her attorneys GLASS KRAKOWER LLP, as and for her Complaint, alleges as follows:

## PRELIMINARY STATEMENT

1.     Plaintiff tenured school counselor Josephine Thomas brings this action against the New York City Department of Education ("NYCDOE"), as well as her principal, Ezra Matthias, pursuant to the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), for discrimination and hostile work environment due to Plaintiff's age.


## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action involves the ADEA.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b), (c) and (d) because the NYCDOE maintains and operates its headquarters and schools within this District and as such is subject to personal jurisdiction in this District.

## THE PARTIES

4.      Plaintiff Josephine Thomas is a resident of the City of Mount Vernon and State of New York.

5.      At all times relevant herein, Defendant NYCDOE is a city school district established pursuant to Title II, Article-52-A of the New York State Education Law, NY Educ. Law Section 2590 *et seq*.

6.      At all times relevant herein, Ezra Matthias was the Principal of I.S. 229 Roland Patterson ("I.S. 229), a middle school in District 09 of the Bronx, New York, within the NYCDOE.

## FACTUAL ALLEGATIONS

7.      Plaintiff began her career with the NYCDOE on or about November 28, 1998, when she was hired as a substitute teacher.

8.      In or around February 1999, Plaintiff became a school counselor.

9.      Plaintiff began working at I.S. 299 September 2001.

10.     Defendant Matthias became principal of I.S. 229 in or around 2002.

11.     Plaintiff is 72 years old.

12.     Beginning four years ago, Plaintiff has experienced differential treatment by her administration due to her age.

## Denial of Per Session Opportunities

13.    The beginning of Defendants' negative, discriminatory and differential treatment towards Plaintiff began during the 2014-15 school year when Defendants denied Plaintiff permission to work in an after-school program, for which she would have received additional compensation, colloquially referred to as "per session" income, and for which she was fully qualified.

14.    Despite being denied this opportunity, younger staff members at I.S. 299 have been granted the right to engage in per session work since the 2014-15 school year up until the end of the 2016-17 school year. Often, these per session opportunity are not even publicly posted, but rather directly given to younger staff members whom the administration favors. As such, because these opportunities are not publicly posted, for the last four years Plaintiff has not even received the opportunity to apply for these opportunities.

## Refusal to Provide Bathroom and Office Keys

15.    In or around April 2016, Plaintiff lost her pocket book, which contained her keys. Upon arrival at the school, Plaintiff requested replacement keys from her administration, including keys to the school's bathroom and keys to her office.

16.    When Defendants did not provide Plaintiff with the keys, she reiterated her request with the administration. Despite multiple requests throughout the remainder of the 2015-16 school year, Defendants never provided Plaintiff with a replacement bathroom or office key during that school year.

17.    As a result, Plaintiff was forced to borrow a bathroom key from her colleagues, which caused her hardship as often she could not obtain a bathroom key immediately or would have to travel to other floors to obtain a key.

18.    Plaintiff also could not lock her office during the 2015-16 school year.

19.     In or around September 2016, for safety reasons, Plaintiff formally requested an office key so that she could lock her office door. The basis for her request was that, while she was in meetings with students or by herself, students would often come and slam her door so as to harass her.

20.     Around the same time, in September 2016, Plaintiff's administration asked faculty members during a professional development conference who needed bathroom keys. Despite Plaintiff being one of the individuals who raised her hand in response, Plaintiff did not receive new bathroom keys.

21.     Following this meeting, Plaintiff made a formal request for bathroom keys in writing.

22.     Two weeks later, in or around late September 2016, Defendants informed Plaintiff that no new keys would be cut.

23.     Subsequently, Plaintiff learned that all of the new, younger teachers at the school had received bathroom keys.

24.     Plaintiff made a second formal request for keys in or around October 2016. Plaintiff's request was not acknowledged.

25.     On November 17, 2016, by email, Plaintiff made a third request for keys. Once again, Plaintiff received no response.

26.     As the 2016-17 school year progressed, Plaintiff continued to request a bathroom and office key, but did not receive them. As such, as during the 2015-16 school year, Plaintiff was forced to borrow bathroom keys from her colleagues and/or supervisors, often resulting in her having to traverse to different floors or down long hallways, which would cause her physical hardship. Plaintiff also could not lock her office, which exposed her to harassment from students.

27.     On or about February 14, 2017, Plaintiff injured herself on a metal door. She was taken to the hospital for her injuries and was out on disability leave until the middle of May 2017.

28.     While Plaintiff was out on leave, a teacher from the Absent Teacher Reserve ("ATR") pool replaced Plaintiff. Plaintiff learned that this teacher received an office key.

29.     In or around May 2017, upon Plaintiff's return from her leave, she finally obtained a key to her office from her ATR substitute.

30.     However, Plaintiff never received a bathroom key for the remainder of the 2016-17 school year.

**Preferential Provision of Supplies and Maintenance**

31.     In or around September 2016, a custodian at I.S. 299 informed Plaintiff that her office would be painted, along with numerous other offices and classrooms at I.S. 299. However, for reasons unknown to Plaintiff, her office was never painted, despite the office and classrooms of younger, similarly-situated staff members being painted.

32.     Additionally, Plaintiff did not receive the same equipment or supplies as younger, similarly-situated staff members.

33.     Defendants issued computers to staff members at I.S. 299 during the 2015-16 and 2016-17 school years.

34.     However, during the 2015-16 school year, Plaintiff's computer did not function. Plaintiff complained to her principal repeatedly during this school year that her computer did not work, but at no point did she receive a functional computer.

35.     During the 2016-17 school year, Defendants did not even issue Plaintiff a computer, functioning or not. As with the year prior, Plaintiff requested a computer, only to once again not receive a computer.

36.     Plaintiff, as a school counselor, was required, on a daily basis, to input data and information to the Special Education Student Information System ("SESIS"), which could only be done using a computer. However, because Plaintiff did not have a functioning computer during the 2015-16 and 2016-17 school years, she was forced to use other individuals' computers, causing Plaintiff hardship.

37.     Notably, younger, similarly situated individuals received computers, including a social worker, another guidance counselor and school psychologist.

38.     Younger staff members were also given functional printers during the 2015-16 and 2016-17 school years. When Plaintiff originally inquired about obtaining a computer during the 2015-16 school year, Defendant Matthias told her that he "cannot put printers everywhere."  Despite this comment, younger, similarly-situated staff members were given printers.

39.     Plaintiff, however, was not provided with a functional printer during those school years.

40.     Notably, the only other staff members who were not given functional computers and printers during the 2015-16 and 2016-17 school years were senior staff members.

41.     During the 2015-16 and 2016-17 school years, younger staff members were given smart boards in their classrooms, whereas older, similarly situated staff members were not given smart boards.

**Other Acts Constituting Hostile Work Environment**

42.     In or around February 2017, Defendants issued Plaintiff a letter to file alleging that Plaintiff failed to submit promotional letters to students on time. However, as Plaintiff informed her administration, the reason her letters was not submitted on time was because she herself did not receive them in a timely manner, through no fault of her own. Nevertheless, Defendants refused to remove the letter to file.

43.    In or around June 2017, after she had returned from her leave of absence, Plaintiff spoke to her union representative Veronica Uwanaka. During this conversation, Ms. Uwanaka informed Plaintiff that Defendant Matthias had said to her, in sum and substance, that "Ms. Thomas is too old for the job" and that he doesn't "want an old guidance counselor in the school."

44.    In or around June 2017, Defendants required Plaintiff to engage in yard duty and lunch duty, which was in violation of her rights pursuant to the CBA, as school counselors are not supposed to be required to engage in such duties.

45.    On or about June 16, 2017, Defendant Matthias issued Plaintiff a letter informing her that she was excessed from I.S. 229.

46.    According to NYCDOE policy, if a school reduces the size of its faculty, it engaged in excessing, which is the process of reducing staff in a particular school when the number of available positions in a title or license area in that school is lower than the number of people in the school who require an assignment in that title of license area.

47.    According to the collective bargaining agreement ("CBA") between the United Federal of Teachers ("UFT") and the NYCDOE, a teacher must be informed by June 15 if he/she will be excessed.

48.    Additionally, the teacher or staff member with the least seniority within the license area will be excessed first.

49.    In response to her notice of excessing, Plaintiff immediately filed a grievance with her union because a less senior social worker remained at I.S. 229, thereby violating Plaintiff's seniority rights.

50.    On June 28, 2017, by mail delivery, Defendant Matthias denied Plaintiff's grievance.

51.     Plaintiff's grievance thereafter proceeded to Step 2, meaning that it was heard by a representative of the Chancellor of the NYCDOE. This hearing took place on September 25, 2017.

52.     On September 25, 2017, during a break, Plaintiff left the room. Upon returning, she was informed by her union representative, Ellin Gallin Procida, that Defendant Matthias had expressed that he did not want Plaintiff at his school. As such, Ms. Harrison advised Plaintiff that she should try to look for an opportunity other than at I.S. 299.

53.     Plaintiff never received a decision to her Step 2 grievance.

54.     On December 13, 2017, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

55.     Plaintiff received a Notice of Right to Sue letter from the U.S. Equal Employment Opportunity Commission dated January 17, 2018. A copy of Plaintiff's Right to Sue letter is annexed hereto.

## FIRST CLAIM FOR RELIEF

### (Age Discrimination and Hostile Work Environment in Violation of ADEA)

56.     Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

57.     Defendant NYCDOE, through the aforementioned conduct, has violated the federal Age Discrimination in Employment Act, by discriminating against Plaintiff by denying her per session income opportunities.

58.     Additionally, Defendant NYCDOE caused Plaintiff to suffer a hostile work environment due to her age during the 2015-16 and 2016-17 school years.

59.     As a result, Plaintiff has suffered damages to be determined at trial.


## SECOND CLAIM FOR RELIEF

### (Age Discrimination and Hostile Work Environment in Violation of NYSHRL)

60.     Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

61.     Defendants NYCDOE and Matthias, through the aforementioned conduct, have violated the New York State Human Rights Law by discriminating against Plaintiff by denying her per session income opportunities.

62.     Additionally, Defendants caused Plaintiff to suffer a hostile work environment due to her age during the 2015-16 and 2016-17 school years.

63.     As a result, Plaintiff has suffered damages to be determined at trial.


## THIRD CLAIM FOR RELIEF

### (Age Discrimination and Hostile Work Environment in Violation of NYCHRL)

64.     Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

65.     Defendants NYCDOE and Matthias, through the aforementioned conduct, have violated the New York City Human Rights Law by discriminating against Plaintiff by denying her per session income opportunities.

66.     Additionally, Defendants caused Plaintiff to suffer a hostile work environment due to her age during the 2015-16 and 2016-17 school years.

67.     As a result, Plaintiff has suffered damages to be determined at trial.

## JURY DEMAND

Plaintiff demands a trial by a jury on all of the triable issues of this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for declaratory relief and damages as follows:

A.   A declaratory judgment that Defendant NYCDOE is in violation of the federal ADEA;

B.   A declaratory judgment that Defendants are in violation of New York State Human Rights Law;

C.   A declaratory judgment that Defendants are in violation of New York City Human Rights Law;

D.   Awarding Plaintiff compensatory damages (including but not limited to emotional distress damages), liquidated damages and punitive damages (to the extent available) pursuant to the ADEA, the New York State and City Human Rights Law;

E.   Awarding Plaintiff costs and reasonable attorneys' fees; and

F.   Such other and further relief as to this Court may deem necessary, just and proper.

Dated:    New York, New York
          April 17, 2018

                    **GLASS KRAKOWER LLP**
                    Attorneys for Plaintiff
                    100 Church Street, Suite 800
                    New York, NY 10007
                    (212) 537-6859

                    By: _____
                        Bryan D. Glass, Esq.

10